UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03-10062-DPW

LINCOLN E. SMITH,
    Plaintiff,

v.

CITY OF BOSTON, BOSTON
INSPECTIONAL SERVICES, AND
KEVIN JOYCE (AS
COMMISSIONER, DEPARTMENT
OF INSPECTIONAL SERVICES,
AND INDIVIDUALLY),
    Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT KEVIN JOYCE'S MOTION FOR SUMMARY JUDGMENT.

INTRODUCTION

Defendant Kevin Joyce incorporates by reference the facts set forth in Defendant City of Boston's and Kevin Joyce's *Local Rule 56.1 Statement of Facts*.

The Plaintiffs' Complaint directed five counts against Defendant Joyce, in both his official and individual capacities, for:

1. violation of the Plaintiff's civil rights pursuant to 42 U.S.C. §1983 and G.L. c. 12, §11 I (the Massachusetts Civil Rights Act);
2. slander;
3. libel;
4. intentional infliction of emotional distress; and,
5. negligent infliction of emotional distress.

All five counts were dismissed against Defendant Joyce in his official capacity by Order of this Court dated February 11, 2003. The Court indicated orally from the bench that Count V was also dismissed, but this dismissal was not subsequently docketed, and Defendant Joyce therefore seeks summary judgment on all five counts.

APPLICABLE STANDARD

Pursuant to Fed. R. Civ. P. 56(b) "[a] party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." If the defendant's "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact," the defendant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). See also Pure Distrib., Inc. v. Baker, 285 F.3d 150 (1st Cir. 2002).

Summary judgment is appropriate when a plaintiff fails to show sufficient evidence to establish an essential element of his case, on which he bears the burden of proof at trial. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "Once the movant avers an absence of evidence to support the nonmoving party's case, the latter must adduce specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" Sheinkopf v. Stone, 927 F.2d 1259, 1261 (1st Cir. 1991) (quoting Celotex, 477 U.S. at 325; Anderson, 477 U.S. at 248; and cases cited). Here, as described

2

below, the Plaintiff cannot adduce specific facts establishing one issue that is both genuine and material and the City is therefore entitled to judgment as a matter of law.

ARGUMENT

1.  **The Negligent Infliction Of Emotional Distress Count Against Defendant Joyce Is Barred By the Massachusetts Tort Claims Act.**

Count V of the Plaintiffs' Complaint is for Negligent Infliction of Emotional Distress. Such a claim is barred by G.L. c. 258, the Massachusetts Tort Claims Act, which provides the exclusive remedy for damages allegedly caused by the negligent acts or omissions of municipal employees. *See* G.L. c. 258, §§1, 2.

The Plaintiff states in Paragraph Four of his Complaint that Kevin Joyce was and is "Commissioner of the Boston Inspectional Services and operates in that capacity." G.L. c. 258, §1 defines the term "public employee" as "elected or appointed, officers or employees of any public employer..." The same section defines "public employer" as "the commonwealth and any county, city, town, educational collaborative, or district..." As such, Defendant Joyce is clearly a "public employee."

Section 2 of the Act provides in relevant part:

> "Public <u>employers</u> shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment...<u>no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment.</u>"  M.G.L. c. 258 §2. (emphasis added).

3

Thus, the public employer is the sole entity answerable for injuries caused by a public employee's negligence. See <u>Appleton v. Town of Hudson</u>, 397 Mass. 812 (1986), <u>Pruner v. Clerk of the Superior Court in the County of Norfolk</u>, 382 Mass. 309, 31 (1981). An individual "public employee" in his capacity as such is not a proper defendant. <u>Taplan v. Town of Chatham</u>, 390 Mass. 1, 2-3 (1983). Therefore, judgment should enter for Defendant Joyce on Plaintiff's negligent infliction of emotional distress claim.

2.  **The Record Does Not Support the Conclusion That Defendant Joyce's Conduct, As Alleged, Rises To The Level of Wrongdoing Necessary To Sustain An Intentional Infliction Claim, Nor Does It Support The Conclusion That Joyce's Conduct Caused Any Damages.**

The Plaintiff also brings a claim against Joyce for Intentional Infliction of Emotional Distress. There are four elements to such a claim under Massachusetts law:

> (i) the defendant intended to inflict emotional distress or knew or reasonably should have known that emotional distress was likely to result from such conduct; (ii) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community;" (iii) the defendant's conduct proximately caused plaintiff's emotional distress; and (iv) the distress was so severe that no reasonable man could be expected to endure it. <u>Davignon v. Clemmey</u>, 322 F.3d 1, 8 (1st Cir. 2003).

Further, for a plaintiff to prevail on an intentional infliction of emotional distress claim, the actions of the defendant must have been without privilege. See <u>Sullivan v. Birmingham</u>, 11 Mass.App.Ct. 359,

4

361 (1981). "The standard for making a claim of intentional infliction of emotional distress is very high in order to 'avoid litigation in situations where only bad manners and mere hurt feelings are involved.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citing Agis v. Howard Johnson Co., 371 Mass. 140, 145 (1976). "The term 'outrageous' has been defined in Massachusetts to mean . . . a high or order of reckless ruthlessness or deliberate malevolence." Ball v. Wal-Mart, Inc., 102 F. Supp. 2d 44, 53 (D. Mass. 2000); See Doe v. Town of Plymouth, 825 F. Supp. 1102, 1110 (D. Mass. 1993) (citing Finucane v. Town of Belchertown, 808 F. Supp. 906, 911 (D. Mass. 1992)).

There is no competent evidence in the record that Defendant Joyce's conduct amounted to anything more than his functioning within the scope of his official duties. The mere fact that Defendant Joyce was employed by two parties (the City and Regina Quinlan) with whom the Defendant was engaged in legal disputes is not sufficient to prove reckless ruthlessness or deliberate malevolence. Although the Plaintiff claims that Defendant Joyce "threatened" him, by saying that "I'm going to treat you just like Cliff Davis" Exhibit A, *Plaintiff's deposition* at p. 113, lines 23-24), he concedes that he has no knowledge suggesting that Mr. Davis received any treatment other than what he deserved under the law, and that his only knowledge of that situation was from the newspaper. (Exhibit A, *Plaintiff's deposition* at p. 122, lines 10-17). The Plaintiff is unable to show that Defendant Joyce's "threats" amounted to anything more than a promise to enforce the law, despite the Plaintiff's status as a City employee.

5

Exhibit A, *Plaintiff's deposition* at p. 122, lines 10-17); Exhibit B, *Defendant Joyce's deposition* at p. 45, line 11 - p. 47, line 24.

Moreover, in light of the fact that the Plaintiff concedes that he has no information suggesting that any of the violations he received was not accurate (violation of the Plaintiff's civil rights pursuant to 42 U.S.C. §1983 and G.L. c. 12, §11I), Defendant Joyce's conduct in insuring that his employees dealt with those legitimate violations can hardly be characterized as extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community" and cannot support an intentional infliction of emotional distress claim.

Moreover, the Plaintiff is unable to make the requisite showing that Defendant Joyce's conduct proximately caused his emotional distress, if any. The Plaintiff testified that he was long ago diagnosed with post traumatic stress disorder, depression, hypertension, and migraine headaches as a result of events surrounding his 1986 termination and subsequent litigation, distress which was so severe that it contributed to his being unable to work for ten years. (Exhibit A, *Plaintiff's deposition* at p. 46, lines 2- p. 47, line 1; p. 195, lines 12-16). These symptoms have never resolved since they first appeared. (Exhibit A, *Plaintiff's deposition* at p. 48, line 12- p. 49, line 4. He concedes that he has had no additional treatment solely as a result of the events which form the basis of this lawsuit. (Exhibit A, *Plaintiff's deposition* at p. 196, line 21 - p. 197, line 10).

6

3.  **The Record Does Not Support The Conclusion That Defendant Joyce Violated The Plaintiff's Constitutional Rights, And He Is In Any Event Entitled To Qualified Immunity From Suit.**

The Plaintiff asserts causes of action against Joyce for civil rights violations pursuant to 42 U.S.C. §1983 (under the Fourth and Fourteenth Amendments to the United States Constitution) and G.L. c. 12, §11I (the Massachusetts Civil Rights Act). The record in this case establishes that the conduct of Defendant Joyce was reasonable and did not rise to the level of a Constitutional violation.

There is no evidence in the record suggesting conduct by Defendant Joyce which implicates the Fourth Amendment. The Fourth Amendment of the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Plaintiff conceded in his deposition that he has no reason to believe that any of the violations for which he was cited on December 20, 2000, December 23, 2000, or December 27, 2000, were inaccurate. See Defendants' *Local Rule 56.1 Statement of Facts* at pp. 2-4.

Likewise, any Fourteenth Amendment due process claim arising out of Defendant Joyce's conduct is similarly defeated by the fact that the Plaintiff concedes that he has no reason to believe that any of the violations for which he was cited on December 20, 2000, December 23, 2000, or December 27, 2000, were inaccurate. See Defendants' *Local Rule 56.1 Statement of Facts* at pp. 2-4. The record demonstrates that Joyce's conduct was based upon lawful acts by his inspectors and was

conducted according to rational, existing policies for the handling of outstanding violations.

In 2000, where there were multiple violations on one property, those would be coordinated through the commissioners office so that the property owner received a comprehensive package (an NOV packet), rather than piecemeal from separate divisions of ISD. (Exhibit B, *Defendant Joyce's deposition* at p. 56, lines 1-13; Exhibit F, *John Dorsey's deposition* at p. 37, lines 3-11; p. 39, lines 5-12). Multiple violations in an NOV packet are closed out collectively when all complaints are resolved. *Defendant Joyce's deposition* p. 60, line 9 – p. 62, line 24. At the expiration of the time allotted to remedy violations, the property is re-inspected. Exhibit C, *Evangeline Davis deposition* at p. 13, line 22 – p. 14, line 6.

Even if Defendant Joyce's actions rose to the level of a Constitutional violation, his actions were reasonable and he is therefore protected from suit by the doctrine of qualified immunity. "Qualified immunity is an affirmative defense for government officials in § 1983 suits which allege constitutional violations." Jarrett v. Town of Yarmouth, 309 F.3d 54, 61 (1st Cir. 2002). Under the doctrine of qualified immunity, "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); See Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999). The ultimate question of whether a defendant is entitled, on a

given set of facts, to the protection of qualified immunity is a question of law for a court to decide. See Jarrett, 309 F.3d at 61 (quoting Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 141 (1st Cir. 2002)). The U.S. Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Saucier v. Katz, 533 U.S. 194, 201 (2001) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)). The privilege is "effectively lost if a case is erroneously permitted to go to trial." Id.

The U.S. Supreme Court has determined that a two-part test should be applied where qualified immunity is sought. See Saucier v. Katz, 533 U.S. at 201. First, it must be determined whether a constitutional right was violated on the facts alleged. See id. "If no constitutional right would have been violated . . . there is no necessity for further inquiries concerning qualified immunity." Id. Second, if such a violation is established, the next question is whether the right was clearly established, analyzed "in light of the specific context of the case, not as a broad general proposition." Id. The inquiry undertaken is that of reasonableness in light of the surrounding circumstances. See id. See also Jarrett, 309 F.3d at 61. Additionally, even where a material issue of fact remains in the merits of underlying claims, qualified immunity may be appropriate. See Saucier, 533 U.S. at 202. Thus, a qualified immunity analysis is separate from the merits of the case. See id. at 205.

Here, each of the acts of Defendant Joyce which are part of the record were reasonable in light of the circumstances surrounding the

9

Plaintiff's violations. As such, even if they rose to the level of a constitutional violation, which Defendant Joyce denies, he is nevertheless shielded from liability.

Finally, liability under the M.C.R.A. requires a finding that Defendant Joyce violated the Plaintiff's constitutional rights "by threats, intimidation or coercion." G.L. c. 12, § H. Again, although the Plaintiff claims that Defendant Joyce "threatened" him, by saying "I'm going to treat you just like Cliff Davis" Exhibit A, *Plaintiff's deposition* at p. 113, lines 23-24), he concedes that he has no knowledge suggesting that Mr. Davis received any treatment other than what he deserved under the law, and that his only knowledge of that situation was from the newspaper. (Exhibit A, *Plaintiff's deposition* at p. 122, lines 10-17). The Plaintiff is unable to show that Defendant Joyce's "threats" amounted to anything more than a promise to enforce the law, despite the Plaintiff's status as a City employee.

   4. **The Plaintiff's Slander And Libel Claims Should Be Dismissed Because The Record Contains No Evidence That Defendant Joyce Made Any Libelous Or Slanderous Statements, Because The Plaintiff Cannot Meet His Burden Of Demonstrating Falsity, And Because He Cannot Demonstrate Damages Proximately Caused By Same,**

The Plaintiff has alleged that Defendant Kevin Joyce libeled and slandered the Plaintiff. (see, *Defendants' Local Rule 56 Statement of Facts*, Exhibit J, pp. 4-6) Both libel and slander are forms of defamation; libel is predominantly written, whereas slander concerns oral communications. See Prosser and Keeton, Law of Torts, § 112 (1984); Draghetti v. Chmielewski, 416 Mass. 808, 812 n.4 (1994).

To make out a *prima facie* case of libel, the Plaintiff must show: (1) a written defamation, (2) of and concerning the plaintiff, (3)

10

made public and (4) false, or if the defamatory writing was true, that it was written with actual malice and (5) that the plaintiff was damaged. See McAvoy v. Shufrin, 401 Mass. 593, 597 (1988); Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 858 (1975); Brauer v. Globe Newspaper Co., 351 Mass. 53, 56 (1966).

The elements of slander are the same as those of libel, except that slander concerns oral defamation and slander requires special damages unless it qualifies as slander per se. See Restatement (Second) of Torts, § 568(2); Prosser and Keeton, Law of Torts, § 112.

Placing aside for a moment the counts' legal elements, the Plaintiff's counts for libel and slander against Defendant Joyce should be dismissed because the Plaintiff has not shown that any allegedly defamatory statements were made by Joyce himself. Plaintiff has alleged that his inclusion in a July, 1998 Boston Globe list of the "worst landlords" in the City of Boston constitutes libel. First, Kevin Joyce was not the Commissioner of ISD during that time period. See Exhibit A, *Plaintiff's deposition* at p. 190, lines 3-18; *Defendant Joyce's deposition* at p. 5, lines 14-17. Therefore, any statements made to the Boston Globe relative to the "worst landlords" list cannot be attributed to Defendant Joyce. In addition, the statute of limitations on libel and slander had run by the time the Plaintiff filed his complaint in late 2001. See G.L. c. 260, § 4, as amended by St. 1973, c. 777, § 3. (statute of limitations on libel and slander is three years).

The Plaintiff has also alleged that certain statements made to the media in December of 2000 were defamatory. Setting aside whether

11

any of the statements meets the elements of libel or slander, all of the evidence shows that Defendant Joyce did not make any of the allegedly defamatory statements.  See Exhibit B, *Defendant Joyce's deposition* at p. 69, lines 1-24.  Rather, the evidence shows that ISD employee John Dorsey handled the media during the time period in which Plaintiff claims that Joyce made the allegedly defamatory statements.  See id.  Defendant Joyce did not speak with the media that day, but rather left it to the discretion of his subordinate, John Dorsey.  See Exhibit F, *John Dorsey's deposition* at p. 15, lines 10-15; Exhibit B, *Defendant Joyce's deposition* at p. p. 70, line 1 - p. 71, line 22.  Defendant is unaware of any legal theory whereby allegedly defamatory statements may be attributed to another who did not speak or write the statements.  Therefore, both defamation counts against Defendant Joyce should be dismissed as a matter of law.

In addition, in regard to the element of falsity, the Plaintiff bears the burden of proving the falsity of the libel.  Comerford v. Meier, 302 Mass. 398, 402 (1939).  This requirement insulates from liability statements that are not provable as false.  See Phantom Touring, Inc. v. Affiliated Publications, 953 F.2d 724, 727 (1992).

In his deposition, the Plaintiff and undersigned counsel engaged in a lengthy colloquy to determine which statements in the newspaper articles which he said formed the basis of his claims (see Exhibit J, pp. 4-6) were untrue and were made by the City's employees (as opposed to remarks obviously attributable to the Plaintiff, or to his tenants).  See generally, Exhibit A, *Plaintiff's deposition* at pp.

148-189. Only the following statements are contested by the Plaintiff.

First, the Plaintiff contests the truth of a portion of a December 29, 2000, *Boston Globe* article (*Defendant's Local Rule 56 Statement of Facts*, Exhibit K) which states that the Plaintiff "stranded" his tenant without heat for five days, though he admits that the tenant did not have heat for five days. See Exhibit A, *Plaintiff's deposition*, p. 159, line 30 - p. 160, line 16. Whether the tenant was "stranded" or not is merely a characterization of a set of facts that the Plaintiff agrees to, namely that the tenant did not have heat for five days. It is not possible to prove this kind of general opinion statement to be false; therefore, the plaintiff will not be able to meet his burden of proving the falsity of that statement. See Comerford, 302 Mass. at 402.

Second, Plaintiff disagrees with a statement in the same article that he "ignored the [no-heat] problem." See Exhibit A, *Plaintiff's deposition*, p. 163, line 24 - p. 164, line 16. This statement is likewise merely a general opinion regarding a set of circumstances that the Plaintiff has admitted are true, namely that the tenant did not have heat for five days. Likewise, the Plaintiff will not be able to prove this statement false. See Comerford, 302 Mass. at 402. Moreover, there is no indication in the record that such a statement was made to the media by Defendant Joyce.

Finally, the Plaintiff claims that a statement by "city officials" in the same article that the heating ducts in the building in question had not been cleaned in two years was false. See Exhibit

A, *Plaintiff's deposition*, p. 165, lines 6-22.  There is no evidence in the record that this statement was made by Defendant Joyce.

The Plaintiff testified that events during 2001 involving tenant Palmira Williams are not part of his claim in the above-entitled action.  (Exhibit A, *Plaintiff's deposition* at p. 177, line 14 - p. 178, line 6).  He also testified that the article dated March 10, 2001, contained no inaccurate statements, and thus was not a part of his libel or slander claims.  *Plaintiff's deposition* at p. 189, lines 9-14.

In addition, the Plaintiff cannot prove damages resulting from the allegedly slanderous and libelous statements.  The Plaintiff testified that he was long ago diagnosed with post traumatic stress disorder, depression, hypertension, and migraine headaches as a result of events surrounding his 1986 termination and subsequent litigation, distress which was so severe that it contributed to his being unable to work for ten years.  (Exhibit A, *Plaintiff's deposition* at p. 46, lines 2- p. 47, line 1; p. 195, lines 12-16).  These symptoms have never resolved since they first appeared. (Exhibit A, *Plaintiff's deposition* at p. 48, line 12- p. 49, line 4.  He concedes that he has had no additional treatment solely as a result of the events which form the basis of this lawsuit.  (Exhibit A, *Plaintiff's deposition* at p. 196, line 21 - p. 197, line 10).

He also makes claims of loss of reputation and loss of opportunity for advancement.  The Plaintiff, however, can identify no specific individual person who ever said disparaging things to him as a result of the newspaper articles, or of any person who said or did

anything which he believes was related to their having read the articles (Exhibit A, *Plaintiff's deposition* at p. 193, line 12 - p. 194, line 21). Similarly, the Plaintiff can identify no jobs for which he has applied and been turned down for reasons related to the allegedly libelous and slanderous statements. (Exhibit A, *Plaintiff's deposition* at p. 198, line 24 - p. 199, line 19)

Because none of the statements which the Plaintiff claims are false were made by Defendant Joyce, because Plaintiff cannot prove the falsity of those statements, and because the Plaintiff cannot articulate damages proximately caused by those statements, the Court should enter judgment for Defendant Joyce on the Plaintiff's claims for slander and libel.

## CONCLUSION

WHEREFORE, Defendant Kevin Joyce moves this Honorable Court to grant summary judgment in its favor on all counts of Plaintiff's Complaint remaining against him, with prejudice.

Respectfully submitted,
DEFENDANT, KEVIN JOYCE,

Merita A. Hopkins
Corporation Counsel

By his attorney:

/s/ James M. Chernetsky

James M. Chernetsky
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4048
BBO# 638152