# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action No.:03-10062-DPW

LINCOLN SMITH,

                    Plaintiffs,

    V.

CITY OF BOSTON, BOSTON INSPECTIONAL
SERVICES, AND KEVIN JOYCE (AS
COMMISSIONER, DEPARTMENT OF
INSPECTIONAL SERVICES AND INDIVIDUALLY)
                  Defendants.

**MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT KEVIN JOYCE'S MOTION FOR SUMMARY JUDGMENT**

### INTRODUCTION

Plaintiff, Lincoln Smith, incorporates by reference the facts set forth in Plaintiff's Local Rule 56.1 *Statement of Material Facts at issue.*

The Plaintiff, Mr. Lincoln Smith, brought this action seeking damages for violation of his civil rights in Count I of his complaint, pursuant to 42 U.S.C. § 1983, Art. 1 of the Massachusetts Constitution and M.G.L. c. 12 § 11I; slander (Count II); libel (Count III); Intentional Infliction of Emotional Distress (Count IV); and, negligent infliction of emotional distress (Count V).

The defendants now seek to have all of these counts dismissed in their motion for summary judgment.

In response, Plaintiff states that the violations are clear and actionable. As a property owner in the City of Boston, Mr. Lincoln Smith is and was generally

insignificant – the owner of two small properties, one of which being his domicile. The only aspect of this Plaintiff which is of any significance to these Defendants is that he holds a largely 'political' position on the Boston City Counsel and has historically been 'at odds' with Mayor Menino and those aligned with him, including the Commissioner of Inspectional Services, defendant Kevin J. Joyce.

What is evident is that when a City that receives and handles as many as thirty-three (33) calls per day in cold stretches during sever winter months; dedicates an enormous amount of resources to one small property owner with a singular complaint of no heat (involving a broken furnace); and the City's Department of Inspectional Services Commissioner is heard stating that "we've got him" as he prepared to go to Mr. Smith's property; the City is violating the State and Federal civil rights of the plaintiff property owner, libeling and slandering the plaintiff, intentionally and negligently inflicting emotional distress. The City maliciously investigated and prosecuted the Plaintiff through its Inspectional Services Department; brought critical media attention to this otherwise insignificant event; provided the media with clearly erroneous information in an effort to embarrass and humiliate the plaintiff; and, failed and refused to clear the violations, despite their knowledge that the repairs demanded had been completed, instead threatening criminal complaints against the Plaintiff.

### APPLICABLE STANDARD OF REVIEW

It is axiomatic that the party moving for summary judgment must show that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P.56(c). This standard applies even if the court is faced with summary judgment motions from different parties. *Fowler v. Boise Cascade Corp.,*

948 F.2d 49, 54 (1st Cir. 1991). *See also Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). In making this inquiry, the court is expected to review the evidence presented to determine whether a jury could reasonably find that the plaintiff proved his or her case by the requisite quantum and quality of evidence or that he or she has not done so. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Ultimately, perhaps the most sound approach to this determination was the application of a functional test that looks at a number of factors to decide whether the question or issue is more suitably resolved by a court or a jury. *See Miller v. Fenton,* 474 U.S. 104, 113-115 (1985); *Chappee v. Massachusetts,* 659 F.Supp. 122-, 1228-1229 (D. Mass. 1987), *rev'd on other grounds,* 843 F.2d 25 (1st Cir. 1988). A dispute about a material fact is "genuine" if the "evidence Is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248*; Rivera-Muriente v. Agosto-Alicea,* 959 F.2d 349, 352 (1st Cir. 1992).

Here, as described below, the Moving Party, Defendant, has not demonstrated that the record reflects an absence of a genuine issue of material fact on every relevant issue. To the contrary, as described below, the record reflects that there are a multitude of genuine issues of material facts left to be determined, and that the Defendants Motion for Summary Judgment should be denied.

### ARGUMENT

**1. THE RECORD SUPPORTS THE CONCLUSION THAT DEFENDANT JOYCE'S CONDUCT RISES TO THE LEVEL OF WRONGDOING NECESSARY TO SUSTAIN AN INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM**

It is well settled in Massachusetts that in order to be successful on a claim for intentional infliction of emotional distress a plaintiff must demonstrate that: (1) the

Defendant intended to inflict emotional distress or that the Defendant knew or should have known that emotional distress was the likely result of his/her conduct; (2) the conduct was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it.  Agis v. Howard Johnson Co.,  371 Mass 140 (1976) . The Defendant, Joyce, maintains that the record reflects that his conduct amounted to nothing more then "functioning with the scope of his official duties".  *See Defendant Joyce's Memorandum of Law Pg. 5.* A careful review of the record, however, suggests that the actions taken against the Plaintiff by the defendant were part of an intentional scheme intending to inflict emotional distress, embarrassment and humiliation.  *See Exhibit N, and Exhibit O.*

**a.  The Defendant's Intent was to Inflict Emotional Distress on the Plaintiff**

The Defendant's intent was clear and unequivocal. Directly and overtly, the evidence demonstrates that as the Defendant Joyce was leaving his office to go to the Plaintiff's property he exclaimed "we've got him". When asked who he was referring to, he answered "Lincoln Smith". *See Exhibit O, Affidavit of Julie Fothergill.* Circumstantially, it is obvious that Defendant Joyce and the Inspectional Services Department devoted an extreme amount of energy, assets and manpower to a singular 'no-heat' call involving a broken furnace during a time period when they were likely fielding more than thirty (30) such calls a day. *See Exhibit B – Deposition of Defendant Joyce p. 50.*

Further, the Defendant Joyce was overt in his efforts to block plaintiff's repair and mitigation efforts, and when all else failed, ordering that his inspectors to write up every violation they could find, later failing and refusing to clear those violations after repairs were concluded and then threatening criminal charges. *See Exhibit B, Deposition of Kevin Joyce p. 44, See Also Exhibit N, Verified Complaint.* Simply stated, no other conclusion could be reached under these circumstances.

> **b.   The conduct was extreme and outrageous and beyond all possible bounds of decency and was utterly intolerable in a civilized community**

Defendant Joyce argues that his conduct amounted to nothing more than "functioning within the scope of his official duties". *See Defendant Memorandum of Law pg. 5.* This might be an accurate statement if the Court were viewing Defendant Joyce's comments in isolation; however, when the Court examines Defendant Joyce's conduct in its entirety, during the entire course of interaction between the Inspectional Services Department and the Plaintiff, the 11 Newport Avenue no-heat issue, it is clear that Defendant Joyce targeted, pursued and wrongly and maliciously prosecuted the Plaintiff – in a civilized society there is nothing more egregious, extreme or more outrageous.

An opportunity presented itself – the furnace broke and there was a no-heat complaint. It was a timely set of circumstances for the defendant – it happened late in the day and evening, the day before Christmas Eve. Once the plaintiff's contractor inspected the furnace and determined it had to be replaced on Christmas Eve, there was no opportunity to order a new furnace until after Christmas, making December 27, 2000 the first opportunity to make the needed repair. *See Exhibit A, Deposition of Lincoln Smith p. 102-107.* The Defendant seized upon the opportunity, exclaiming "we've got him" and

set upon a course of action to interfere and obstruct plaintiff's efforts to make the necessary repairs; instructed his minions to "find every violation you can", to "got through the property with a "fine toothed comb"; threaten to "take him down like they took down Cliff Davis" *See Exhibit B – Deposition of Joyce pg. 44, Exhibit O- Affidavit of Julie Fothergill and Exhibit A – Deposition of Plaintiff pp. 109-115*; issue violation notices for every conceivable reason they could find; and, then refusing to clear the violations once repaired, threatening criminal complaints and taking the issue to the media in an overt effort to humiliate and embarrass the plaintiff. *See Exhibit B Deposition of Defendant Joyce p. 65*-66.

**c.   The Actions of the Defendant Were the Cause of the Plaintiff's Distress;**

While the Plaintiff had previously suffered from with emotional distress, prior to December 2000 he had returned to a stable emotional state. It was only after Defendant Joyce's threats and intimidation that Plaintiff mental health again deteriorated. The record reflects that immediately following Defendant Joyce conduct at the Newport Street house on December 27, 2000 Plaintiff became anxious, depressed, unable to sleep, and visibly upset. *See Exhibit A – Plaintiff's Deposition p. 196 Line 8-20.* The record also reflects that as a direct and proximate result of the events that form the basis of this lawsuit, Plaintiff sought medical attention for his emotional distress. *See Plaintiff Deposition p. 197 Line 1-10.* The fact that Plaintiff had a history of emotional distress does not preclude this claim.

**d.   The emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it.**

The determination of whether or not the distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure is a question

6

of fact for the jury and not properly subject to determination by a motion for summary judgment. Viewing the record in the light most favorable to the nonmoving party, it is reasonable to conclude that a Jury of the Plaintiff's peers could that for the plaintiff on that issue.

**2. The record supports the conclusion that defendant Joyce violated plaintiff's civil rights, and that commissioner Joyce is not entitled to the defense of qualified immunity.**

It is well settled that Plaintiff, as a citizen of the Commonwealth of Massachusetts, is protected from threats, intimidation, or coercion, which would interfere with any of his aforementioned civil liberties. *See Massachusetts Civil Rights Act G.L. c. 12 §11*. Defendant Joyce maintains that his conduct was "reasonable and did not rise to the level of a constitutional violation." *Defendant's Memorandum of Law pg 7*. Further, Defendant Joyce states that even if his conduct violated Plaintiffs civil rights he is still immune from suit because he is protected by the cloak of qualified immunity. *Id pg. 8.*

The record reflects that Defendant Joyce violated both the Massachusetts Civil Rights Act and 42 U.S.C. §1983 by interfering with Plaintiff's civil liberties, and at no time was his conduct protected by the cloak of qualified immunity.

**a. Defendant Joyce violated the Massachusetts civil rights act by using threats, intimidation and coercion to interfere with plaintiff's constitutional right to equal protection and due process of the law.**

The Courts have determined that within the context of the Massachusetts Civil Rights Act, in order to demonstrate that Defendant has threatened him or her, Plaintiff has to establish that Defendant's acts or language have placed him/her in fear of injury or damage. *Delaney v. Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989). Contrary to Defendant Joyce's assertion, the record reflects that the foundation of

Plaintiff's Massachusetts Civil Rights Act violation is not limited to nor solely based on the defendant's threat - "I'm going to treat you like Cliff Davis" *See Defendant Joyce Memorandum of Law pg. 10*. Rather, it is the totality of Defendant Joyce's actions which amounts to clear evidence of threat, intimidation and coercion that in turn violated the Plaintiff's right to due process and equal protection under the law.

Not only does the record establish that the Plaintiff was threatened by the Defendant, it equally clear that conduct of the defendant was intentional. *Deas v. Dempsey*, 403 Mass 468 (1988). While the record supports the conclusion that the Defendant's actions were willful and hostile, the Plaintiff does not have to demonstrate that the defendant's actions were willful or hostile in order to recover. *Redgrave v. Boston Symphony Orchestra,* 399 Mass 93, (1987).

The record reflects that the Defendant was in a position of power, he was on the scene of the heat investigation, he controlled the investigation, he managed the media department, he instructed his inspectors to make a "thorough investigation", he was not, contrary to his testimony, brought to the scene because Investigator O'Donnell, was threatened by Plaintiff, he came to the scene out of his own free will, and then used his power to suppress the civil rights of the Plaintiff. *See Exhibit B – Defendant Joyce's Deposition p.40, 44,45-46.  See also Exhibit G – Deposition of Steven O'Donnell p. 19.* The record will also reflect, that Defendant Joyce disregarded two previous investigations of Plaintiff's property where he passed both Section 8 requirements and the Boston Code requirements, when he used his position to "take down" plaintiff.  *See Exhibit A – Plaintiff's Deposition p. 208.* When viewed in its totality, although plaintiff might not allege a multiple of "smoking gun" threats, Defendant Joyce used, and in this case

abused, his position as Commissioner of the Department of Inspectional Services to interfere with and violate Plaintiff's civil liberties.

**b. Defendant Joyce violated 42 U.S.C §1983 by violating the Plaintiff Constitutional rights, and Defendant Joyce, in his individual capacity, is not protected by the Cloak of Qualified Immunity.**

Plaintiff has a Constitutional Right to equal protection and due process. Defendant Joyce's malicious prosecution of the Plaintiff violated these aforementioned rights. Defendant Joyce would have the court believe that he has an affirmative defense to Plaintiff's claim for constitutional violations because Plaintiff does not allege that any violations he received as a result of Defendant Joyce's instructions to "go through his property with a fine tooth comb" and "write every violation they could find" were inaccurate. *See Defendant Joyce Memorandum of Law pg.7.* However, there is no such affirmative defense recognized by the Court.  Plaintiff's acknowledgment as to the validity of some or all of the cited violations is not the same as consent to have his civil rights violated.

The Record reflects that Plaintiff was mistreated under the law. The record reflects that Plaintiff was singled out by Defendant Joyce and held to higher standards then other similar situated landlords. Contrary to Defendant Joyce's argument the record does not demonstrate that Defendant Joyce's conduct was based upon lawful acts by his inspectors and was conducted in accordant to rational policies. *Id at 7-8.*

The record reflects that when Commissioner Joyce was informed that Plaintiff was experiencing heat problems at his Newport Avenue location he immediately made it his own personnel vendetta to ensure that the Department of Inspectional Services used every inch of its power to enforce its code in the strictest manner. *See Plaintiff Deposition*

*p 209.*  This type of misuse of power is actionable because it demonstrates that Defendant Joyce treated Plaintiff in a manner not in accordance with the general policy, custom, or practice of the Department of Inspectional Services. As evidence of this deviation of policy the record reflects that Commissioner Joyce testimony that Investigator O'Donnell asked for his presence because Investigator O'Donnell felt threatened, was contradicted by Investigator O'Donnell's own testimony that he did not in fact request Defendant Joyce's presence at the scene. *See Exhibit B – Defendant Joyce's Deposition p.40, 44,45-46.  See also Exhibit G – Deposition of Steven O'Donnell p. 19.*

Additionally, the Plaintiff has demonstrated that less then ten months before the heat problem at 11 Newport Avenue his property has passed two separate pre-inspections. *See Exhibit A – Plaintiff's Deposition p.208.  See also Exhibit C –Deposition of Evangelina Maxwell-Davis p. 16-19.* One which availed him to qualify for §8 housing, and the second taken to ensure that his property was up to the City of Boston's housing code. On there face these two separate inspections do not prove that the inspections taken ten months later violated Plaintiff's constitutional rights, however, taking them into consideration a reasonable jury could find that only when Defendant Joyce came on scene, directed his staff, and made it a personnel situation, did the situation in which a single heat violation was found on December 23, 2000 escalate into a 17 count violation found on December 27, 2000.  This type of arbitrary and capricious prosecution was not within the scope of  Defendant Joyce's employment. This type of malicious prosecution violated Plaintiff's constitutional equal protection right.

Furthermore, the cloak of qualified immunity does not protect the Defendant. Although qualified immunity is an affirmative defense for government officials

performing discretionary functions of his or her job, it is not an appropriate defense in Plaintiff's claim against Defendant Joyce in his individual capacity. Furthermore, Defendant Joyce is not shielded from civil liability because Plaintiff can establish that Defendant Joyce violated a clearly established federal right. *Kelly v. Joseph W. LaForce, Town of North Brookfield*, 288 F.3D 1 (1ST CIR. 2002).

The question of whether or not a Defendant is able to assert the defense of qualified immunity is a question of law for the court. *Jarrett v. Town of Yarmouth,* 309 F.3d 54, 61 (1st Cir. 2002) Whether or not qualified immunity is appropriate is a two-step inquiry. First, the court must "determine whether plaintiff has alleged a deprivation of a constitutional or federal right by defendant… If so, the court must determine whether that right was clearly established at the time of the alleged violation." Id at . IF defendant's actions were reasonable in the light of the circumstances then defendant is shielded from liability by the affirmative defense of qualified immunity. In the alternative, if Defendants actions are not reasonable in the light of the circumstances then he or she is not shielded from liability.

The record reflects that Defendant Joyce's actions were not reasonable under the circumstances. Even if Investigator O'Donnell requested Defendant Joyce, contrary to O'Donnell deposition, *See Exhibit B – Defendant Joyce's Deposition p.40, 44,45-46. See also Exhibit G – Deposition of Steven O'Donnell p. 19*, his actions from the time he arrived on scene were not reasonable. The record reflects that Defendant Joyce transformed a simple no heat call into a claim for multiple violations, intentionally requested the media to respond to the situation, informed the Plaintiff that it was his intent to treat him like slum landlord Cliff Davis, and purposefully humiliated Plaintiff.

Hence, none of Defendant Joyce's actions can be seen as reasonable under the circumstances, and therefore the affirmative defense for qualified immunity is not applicable.

   **3.  The Record Supports the claim that Defendant Joyce instructed Libeled and Slandered the Plaintiff by Disseminating erroneous information to the News Media in an attempt to embarrass and humiliate the Plaintiff**

The elements of a libel case are a false and defamatory written communication of an concerning the plaintiff. *Restatement (Second) of Torts § 91 et seq*. (1979). *See Lyman v. New England Newspaper Publishing Co*., 286 Mass. 258, 260-263, 190 N.E. 542 (1934). Imputation of criminal conduct is defamatory per se. *Jones v. Taibbi*, 400 Mass. 786, 792, 512 N.E.2d 260 (1987).

A simple review of the newspaper articles (*Exhibits K, L and M*), together with the various violation notices (*Exhibit D, E, H and I*) make clear that the defendant libeled the plaintiff. In addition to manufactured violations of the city's codes, the defendant threatened and referenced criminal behavior on the part of the Plaintiff for his alleged failure to correct the noticed violations.

Similarly, in the same transactions a jury would be warranted in concluding that the defendant had slandered the plaintiff, by making false and defamatory statements of and concerning the Plaintiff.

CONCLUSION

**WHEREFORE,** for the reasons stated the defendant's motion for summary judgment should be denied.

Respectfully submitted
Plaintiff
By his Attorney,

/s Mark T. Stopa_____
Mark T. Stopa, Esq. (BBO#560264)
STOPA & ASSOCIATES, LLC
36 Mechanic Street, Suite 208
Foxboro, Massachusetts 02035-2073
508-543-0600

April 28, 2004