# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Civil Action No.:03-10062-DPW

LINCOLN SMITH,

                Plaintiffs,

     V.

CITY OF BOSTON, BOSTON INSPECTIONAL
SERVICES, AND KEVIN JOYCE (AS
COMMISSIONER, DEPARTMENT OF
INSPECTIONAL SERVICES AND INDIVIDUALLY)
              Defendants.

## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT CITY OF BOSTON'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff, Lincoln Smith, incorporates by reference the facts set forth in Plaintiff's Local Rule 56.1 *Statement of Material Facts at issue.*

The Plaintiff, Mr. Lincoln Smith, brought this action seeking damages for violation of his civil rights in Count I of his complaint, pursuant to 42 U.S.C. § 1983, Art. 1 of the Massachusetts Constitution and M.G.L. c. 12 § 11I; slander (Count II); libel (Count III); Intentional Infliction of Emotional Distress (Count IV); and, negligent infliction of emotional distress (Count V).

The defendants now seek to have all of these counts dismissed in their motion for summary judgment.

In response, Plaintiff states that the violations are clear and actionable. As a property owner in the City of Boston, Mr. Lincoln Smith is and was generally insignificant – the owner of two small properties, one of which being his domicile. The only aspect of this Plaintiff which is of any significance to these Defendants is that he holds a largely 'political' position on the

Boston City Counsel and has historically been 'at odds' with Mayor Menino and those aligned with him, including the Commissioner of Inspectional Services, defendant Kevin J. Joyce.

What is evident is that when a City that receives and handles as many as thirty-three (33) calls per day in cold stretches during sever winter months; dedicates an enormous amount of resources to one small property owner with a singular complaint of no heat (involving a broken furnace); and the City's Department of Inspectional Services Commissioner is heard stating that "we've got him" as he prepared to go to Mr. Smith's property; the City is violating the State and Federal civil rights of the plaintiff property owner, libeling and slandering the plaintiff, intentionally and negligently inflicting emotional distress. The City maliciously investigated and prosecuted the Plaintiff through its Inspectional Services Department; brought critical media attention to this otherwise insignificant event; provided the media with clearly erroneous information in an effort to embarrass and humiliate the plaintiff; and, failed and refused to clear the violations, despite their knowledge that the repairs demanded had been completed, instead threatening criminal complaints against the Plaintiff.

**APPLICABLE STANDARD OF REVIEW**

It is axiomatic that the party moving for summary judgment must show that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law". Fed.R.Civ.P.56(c). This standard applies even if the court is faced with summary judgment motions from different parties. *Fowler v. Boise Cascade Corp.,* 948 F.2d 49, 54 (1st Cir. 1991). *See also Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). In making this inquiry, the court is expected to review the evidence presented to determine whether a jury could reasonably find that the plaintiff proved his or her case by the requisite quantum and quality of evidence or that he or she has not done so. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). Ultimately,

perhaps the most sound approach to this determination was the application of a functional test that looks at a number of factors to decide whether the question or issue is more suitably resolved by a court or a jury. *See Miller v. Fenton,* 474 U.S. 104, 113-115 (1985); *Chappee v. Massachusetts,* 659 F.Supp. 122-, 1228-1229 (D. Mass. 1987), *rev'd on other grounds,* 843 F.2d 25 (1st Cir. 1988). A dispute about a material fact is "genuine" if the "evidence Is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248*; Rivera-Muriente v. Agosto-Alicea,* 959 F.2d 349, 352 (1st Cir. 1992).

Here, as described below, the Moving Party, Defendant, has not demonstrated that the record reflects an absence of a genuine issue of material fact on every relevant issue. To the contrary, as described below, the record reflects that there are a multitude of genuine issues of material facts left to be determined, and that the Defendants Motion for Summary Judgment should be denied.

### ARGUMENT

1. **The Plaintiff agrees that the City of Boston does not have liability under the Massachusetts Civil Rights Act.**

The Plaintiff agrees that the City of Boston is not a "person" as defined under the Massachusetts Civil Rights Act and that the portion of Count I relating to that claim should be dismissed. *See Defendant, City of Boston Memorandum of Law p. 3.*

2. **Defendant's Motion for Summary Judgment as to Plaintiff's 42 U.S.C. §1983 Claim Should be Denied.**

The Defendant argues that summary judgment should be granted in respect to Plaintiff's 42 U.S.C. §1983 claim because Plaintiff fails to make a showing of a violation of his constitutional rights that were caused by a municipal custom, policy, or practice, and/or that the plaintiff is

unable to demonstrate that the City, through its deliberate conduct, was the moving force behind any alleged wrongdoing.

The record will reflect, however, that the plaintiff can demonstrate that (a) His injuries were caused by a violation of a specific municipal custom, policy or practice; (b) the City was the moving force behind the violation of the aforementioned municipal custom, policy or practice;  and,  (c) that there is a direct causal link between the violation and Plaintiff's injury.

> **a.  Plaintiff's injuries were caused by a violation of a specific municipal custom, policy, or practice; the actions of the City of Boston were a knowing violation of a municipal custom, policy or practice; and, the city was the moving force behind the violation of the aforementioned municipal custom, policy or practice**

The City of Boston, through its Inspectional Services Department and its Commissioner, Kevin J. Joyce, has the authority and responsibility to enforce the Zoning Code of the City of Boston and the Massachusetts Building Code, as well as related codes and regulations as they relate to structures within the City of Boston. *See Exhibit B, Deposition of Kevin Joyce p. 6-7.* The law imposes on them the further responsibility that their authority not be exercised in an arbitrary, capricious or malicious manner.

Under the circumstances presented, the City of Boston, through its Inspectional Services Department and its Commissioner, Kevin J. Joyce, engaged in a course of behavior which was contrary to the authority and responsibility (custom, policy or practice) in that the Plaintiff was unreasonably targeted by the City for enforcement as a part of a scheme to embarrass and humiliate Plaintiff for reasons not associated with the authority and responsibility given the City. These actions by the City of Boston effectively denied the Plaintiff due process and were a violation of his right to equal protection under the law.

4

The record clearly demonstrates that when the furnace broke at 11 Newport Street, the City of Boston seized upon the opportunity to humiliate and embarrass the plaintiff. *See Exhibit A, Plaintiff Deposition p.109* The City interfered with his efforts to exact the necessary repairs and then cited him for his failure to timely make repairs. *See Exhibit N, Verified Complaint.* As the owner of two (2) properties, one being his personal residence, the plaintiff is otherwise an insignificant player in the field of housing in the City of Boston. *See Exhibit A, Plaintiff Deposition p. 7.* Yet, the City of Boston devoted significant assets and manpower to this singular no-heat complaint; the property swarming with inspectors, the Commissioner of the Inspectional Service Department; the ISD public relations personnel and an independently retained by ISD – all for a no-heat complaint at a property where the resident was not in residence, having left for a holiday vacation. *See Exhibit G, Deposition of Steven O'Donnell pg.14.* Furthermore, the animus of the City toward the plaintiff was made clear when the Commissioner of the ISD, Kevin Joyce exclaimed "we've got him" as he headed out to the plaintiff's property from the ISD office. *See Exhibit O, Affidavit of Julie Fothergill.* The later comments of ISD personnel and the Mayor of the City of Boston to the news media which relate factually incorrect assertions further demonstrate this point. *See Exhibit K, Boston Globe Article, Exhibit L, Boston Globe Article, and Exhibit M, Boston Herald Article.*

The Plaintiff was singled out by the Defendant, City of Boston and maliciously prosecuted.  Plaintiff made a reasonable and conscientious effort to remedy the no-heat problem immediately after he was notified. *See Exhibit A, Plaintiff's Deposition p. 110.* Specifically, both Plaintiff and Inspector Steven O'Donnell, testified that on December 23, 2000 after receiving notice from Department of Inspectional Services  that Apartment 1 at 11 Newport Street was without heat Plaintiff purchased space heaters, was in contact with the Inspectional Service

Department, and immediately responded to the 11 Newport Scene. *See ID. at 68-74, SEE also Exhibit G, Deposition of Steven O'Donnell pg.10-11.* Additionally, after the space heaters were refused the evidence has established that Plaintiff once again called Mr. O'Donnell asking for his advice, Mr. O'Donnell assured Plaintiff that there was nothing else to be done, it was late, Mr. O'Donnell could not require the tenant to take the space heaters, and that the tenant had told Mr. O'Donnell that she was leaving the premises for the holiday. *See Exhibit G, Deposition of Steven O'Donnell p. 14.*

Hence, despite his best effort to mitigate the heat situation on December 23, 2000, the Department of Inspectional Services used its Inspectional code to purposefully deprive Plaintiff of his constitution right to equal protection rights under the law.  The record reflects that even though the pattern or practice of the Department of Inspectional Services is and was to re-inspect after notification by a landlord that a violation has been corrected, *See Exhibit B Defendant Joyce's Deposition p. 23,* Department of Inspectional Services records reflect that it made a reinspection on December 26, 2000, without the request of the owner and with the knowledge both that the property was not inhabited and that the plaintiff could not have yet ordered, received and had installed a new furnace. *See Defendant Production of Document Request, Exhibit BB, Defendant Production of Documents; See also Exhibit G, Deposition of Steven O'Donnell p 13-14.*

Furthermore, when Plaintiff's hired contractor, Francis Grant from Comfort Heating Company, returned to the Newport Avenue Property to install a new boiler he was refused access to the house by ISD personnel. *See Exhibit A, Plaintiff Deposition p. 104-108* Plaintiff was summoned to the property by the contractor, and was greeted by a swarm of Department of Inspectional Services officials including the head of media relations, John Dorsey and

Commissioner Joyce. *See Exhibit N, Verified Complaint.*  It was at this time that Commissioner Joyce, and his staff stated to Plaintiff that they intended to use the inspectional code to "take him down", and go through the building with a "fine tooth comb".  *See Exhibit A, Deposition of Plaintiff p. 109*  The net result was that regardless of the Plaintiff's efforts to mitigate and correct the heating problem, the City by and through its representatives, used its power and to interfere with his efforts, a violation of Plaintiff's civil rights.

While the Defendant has further argued that Plaintiff is unable to demonstrate that the city was a "Moving Force", the record suggests otherwise. The actions demonstrated were orchestrated by the Commissioner of the City of Boston's Inspectional Services Department. *See Exhibit O, Affidavit of Julie Fothergill.*  Subsequent to the incidents at the core of this dispute, the media/public relations person for the Inspectional Services Department provided misinformation to the media outlets and the Mayor of the City of Boston weighed in on the issue, also utilizing erroneous information in an obvious effort to embarrass and humiliate the plaintiff. *See Exhibit K, Exhibit L, Exhibit M.*

The United States Supreme Court in *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), held that a municipality could be held liable under 42 U.S.C. §1983 if a Plaintiff's federally protected right was violated by some municipal policy, custom, or procedure. In *Pembaur v. City of Cincinnati,* 475 U.S. 469, (1985) the Court further determined that a single municipal decision can be grounds for §1983 liability.  Although not every decision by a municipal officer automatically subjects the Municipality to §1983 liability, if the official has responsibility and authority to make a final policy decision, then the Municipality may be held liable if the policy makers decision violates a federally protected right. *Pembaur* at 483. *Pembeur* further provides that a Court can find "that municipal liability under §1983 attaches

7

where… a deliberate choice to follow a course of action is made from among various alternative by the official or officials responsible for establishing final policy with respect to the subject matter of the question." *Id*.

Here, the City of Boston acted through its Inspectional Services Department and largely at the direction of its Commissioner, Defendant Kevin J. Joyce. More particularly, Defendant Joyce, as Commissioner, had the power and authority to establish the policies and procedures of his department and select a course of action when presented with a situation. *See Exhibit B Deposition of Defendant Joyce p. 44*. The City of Boston, by employing Defendant Joyce as the person in charge of the Department of Inspectional Services, *See Joyce Deposition p. 6*, and entrusting him with the power of making final policy decisions as to regulations of the Department; including among other things, deciding how an inspection would be handled, deciding when he would or would not request investigational material be personally available for his inspection, deciding whether or not it was appropriate for the department to speak to the media, has created a policy making position which enabled Commissioner Joyce to make policy decisions which in turn hold the City of Boston culpable under 42 U.S.C. §1983.

In *Pembaur*, wherein the Supreme Court decision held the City of Cincinnati liable under §1983, the court found that the decisions made by the County Prosecutor in directing the actions of Deputy Sheriff's under his control formed the basis for a 42 U.S.C. §1983 cause of action.

The record here provides no less. When the Department of Inspectional Services inspectors were unsure of an investigation, or an investigatory technique he or she calls his or her supervisor, then the supervisor calls the manager, and then the manager calls the Commissioner. *See Exhibit B – Deposition of Commissioner Joyce p. 9-17.* The final policy decision power at the Department of Inspectional Services comes from the Commissioner, and on December 27,

2000 those decisions led to violations of Plaintiffs due process and equal protection rights under the law.

**3. Plaintiff's negligence claim against the city is not barred by the Massachusetts Tort Claims Act because city employees were not exercising due care in there enforcement of the inspectional code.**

The Defendant, City of Boston's argument for dismissal of Plaintiff's negligent infliction of emotional distress cause of action, is based on the presumption that Plaintiff is alleging that Defendant employees were acting with due care when the alleged negligence occurred. *See Defendant Memorandum of Law p 8-9*. This is not a correct statement of the Plaintiffs position. While G.L. c. 258 §10 might identify certain categories of claims which a Plaintiff may not recover against a municipality, it would a reasonable interpretation of these facts to suggest that the City of Boston did not use due care in the execution of its duties, while also in the process of violating both his Massachusetts and federal civil rights.

The record reflects that Defendant Joyce, at the time a City employee and Commissioner of the Department of Inspectional Services, was not using due care, as it is clear that he consistently abused the authority that was granted to him by the Commonwealth of Massachusetts and the City of Boston. *See Exhibit O, Affidavit of Julie Fothergill.* The fact that Plaintiff concedes that the violations he was cited for on December 27, 2000 were an accurate reflection of the condition of the property that day is not evidence that the Department of Inspectional Services was using due care while conducting the inspection. The fact that the Department of Inspectional Services had previously inspected the property on December 23, 2000 and only found a heating violation and a faulty smoke detector, and then four days later, at the direction of the Commissioner, found not only a continuation of the heating issue but also fourteen other violations, is evidence of the malicious prosecution mandated by commissioner.

9

*See Exhibit H, 12/27 Violation notice.* Furthermore, the property had been inspected in February

and found to be free of violations worthy of being cited.

The motion of Defendant, City of Boston, for Summary Judgment on Plaintiffs negligent

infliction of emotional distress claim must be denied.

### CONCLUSION

**WHEREFORE,** for  the reasons stated the defendant's motion for summary judgment should be

denied.

>                         Respectfully submitted
>                         Plaintiff
>                         By his Attorney,
>
>                         /s Mark T. Stopa_____
>                         Mark T. Stopa, Esq. (BBO#560264)
>                         STOPA & ASSOCIATES, LLC
>                         36 Mechanic Street, Suite 208
>                         Foxboro, Massachusetts 02035-2073
>                         508-543-0600

April 28, 2004