# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

Civil Action No.:03-10062-DPW

| |
|---|
| LINCOLN SMITH,<br>                   Plaintiffs,<br><br>    V.<br><br>CITY OF BOSTON, BOSTON INSPECTIONAL SERVICES, AND KEVIN JOYCE (AS COMMISSIONER, DEPARTMENT OF INSPECTIONAL SERVICES AND INDIVIDUALLY)<br>                   Defendants. |

### PLAINTIFF LINCOLN SMITH LOCAL RULE 56.1
### STATEMENT OF MATERIAL FACTS AT ISSUE

Pursuant to Local Rule 56.1 the Plaintiff, Lincoln Smith, herby submits the following Genuine Material Facts that remain at issue:

1. The within action has been brought by Mr. Lincoln Smith with regard to his claim for damages as a result of the conduct of the City of Boston and it's Inspectional Services Department, and in particular, it's Commissioner, Kevin J. Joyce, relating to Mr. Smith being targeted for an unwarranted, unconstitutional campaign of selective enforcement activities by that department.

2. The plaintiff, Mr. Lincoln Smith, owns two properties in the City of Boston. The first is located at 6 Willis Street and is a three (3) family home, where Mr. Smith also resides. The Second property is located at 11 Newport Ave and is also a three (3) family home which plaintiff rents out. Exhibit N, *Verified Complaint* at p. 1.

3. The plaintiff, Mr. Lincoln Smith, brought this action seeking damages for violation of his civil rights in Count I of his complaint, pursuant to 42 U.S.C. § 1983, Art. 1 of the Massachusetts Constitution and M.G.L. c. 12 § 11I; slander (Count II); libel (Count III); Intentional Infliction of Emotional Distress (Count IV); and, negligent infliction of emotional distress (Count V). The defendants now seek to have all of these counts dismissed in their motion for summary judgment. Exhibit N, *Verified Complaint*, Defendant's Motions for Summary Judgment.

4. In response, plaintiff states that the violations are clear and actionable. As a property owner in the City of Boston, Mr. Lincoln Smith is insignificant – the owner of one small property. The only aspect of this plaintiff which is of any significance to these defendants is that he holds a largely 'political' position on the Boston City Counsel and has historically been 'at odds' with Mayor Menino and those aligned with him, including the Commissioner of Inspectional Services, defendant Kevin J. Joyce.

FACTS CONCERNING THE EVENTS OF DECEMBER 23, 2000

5. The incidents which give rise to the complaint began on or about December 23, 2000 with a report of no heat at a property owned by Mr. Smith located at 11 Newport Street, Dorchester, Massachusetts. Exhibit N, *Verified Complaint*.

6. On December 23, 2000, the Saturday before Christmas, a complaint of no heat in the first floor unit of the Newport Street triple-decker was called into Boston Inspectional Services. Exhibit. G, *Deposition of Steven O'Donnell* at p.9 line 19-25.  Exhibit A, *Deposition of Lincoln Smith* at p.69 Line 8-17.

7. Mr. Smith learned of the no heat report at approximately 4:30 PM and immediately contacted the tenant. Exhibit A, *Deposition of Lincoln Smith* at p.68 Line 19-p. 69 Line 13.

8. When he contacted the tenant, Mr. Smith learned that an Inspectional Services Department Investigator (Mr. Steve O'Donnell) was already at the property. Mr. Smith confirmed the existence of the problem with the investigator. After reviewing his remediation options with the inspector, Mr. Smith confirmed that a proper short-term solution would be to supply space heaters for the weekend and to have a repairman on site as soon as possible after the holiday weekend. Exhibit A, *Deposition of Lincoln Smith,* p. 69 Line 21- p.70 Line 9.

9. Following his discussion with Inspector O'Donnell Mr. Smith proceeded to the nearest Home Depot, and purchased the requested space heaters. Exhibit P, *Home Depot Space-Heater Receipt.*

10. After purchasing the space heaters Mr. Smith immediately brought them to the 11 Newport property. Exhibit A, *Deposition of Lincoln Smith* p. 71 Line 20-p. 74 Line 10

11. After Tenant O'Shea refused to accept the space heaters Mr. Smith telephoned investigator O'Donnell to inform him that the space heaters had been rejected and to ask for his, (investigator O'Donnell's), assistance in mitigating the heat issue. Exhibit G, *Deposition of Steven O'Donnell*, p12 line 16- P.14 Line 3.

12. It was at this point, after Tenant O'Shea had refused the heaters and Mr. Smith was on the telephone with O'Donnell, that Investigator O'Donnell told Mr. Smith

    that he could not force Tenant O'Shea to accept the heaters, and not to worry because Ms. O'Shea was vacating the apartment over the Christmas holiday and would be gone for three or four days. Exhibit G, *Deposition of Steven O'Donnell* p. 13 Line 10- p.14 Line 12.

13. Mr. Smith immediately contacted his heating repair contractor and arranged for the furnace and heating system to be inspected. Plaintiff Exhibit 1, *Verified Complaint*. The contractor advised the furnace had to be replaced, though the first opportunity to order the replacement would not be until December 26, 2000, because of the holiday. The furnace was obtained on December 27, 2000 and his contractor went to the premises to install the system. Exhibit A, *Deposition of Lincoln Smith,* p 102 line 9- p.104 Line 24.

FACTS CONCERNING THE EVENTS OF DECEMBER 27, 2000

14. When Mr. Smith's repairman went to the property on December 27, 2000, the Commissioner of the Inspectional Services Department, Kevin J. Joyce was on site with approximately eight (8) other inspectors demanding that the City's contractor perform repairs to the unrepairable furnace and ordering Mr. Smith's contractor from the property. Exhibit N, *Verified Complaint*. Exhibit A, *Deposition of Lincoln Smith* p.103 line 19- p104 Line 5.

15. It was only when Mr. Joyce learned that the existing furnace was unrepairable and would in fact cause a far more dangerous condition that he relented and permitted Mr. Smith's contractor to perform the replacement of the heating system and the other repairs necessary to restore heat to the building. Exhibit N, *Verified Complaint* paragraph 10.

16. On that date, as Mr. Joyce was preparing to leave the premises, he ordered his team of inspectors to "go through the building with a fine tooth comb and write up every violation you can find". Exhibit B, *Deposition of Kevin Joyce* p 44, Exhibit N, *Verified Complaint*.

17. Despite the fact that the Inspectional Services Department had earlier the same year inspected and certified the condition of the property, this date his investigators cited approximately seventeen (17) minor, technical violations unrelated to the problem with the heat and required that they be remediated within twenty-four (24) hours. Exhibit A, *Deposition of Lincoln Smith*, p. 85 Line 19- p.86 line 13.

18. It was later learned that when Commissioner Joyce received the telephone call on December 27, 2000 as to the alleged heat violation at 11 Newport Avenue he hung up the phone and stated, "We've got him". In response to hearing commissioner Joyce state "we've got him" Julie Fothergill, assistant commissioner of policy and planning, asked him "Got who?" Commissioner Joyce then stated "Lincoln Smith". Exhibit O, *Affidavit of Julie Fothergill*.

19. In connection with this sweep by the investigators, Mr. Joyce threatened Mr. Smith, stating before the witnesses at the location, "I'm going to treat you the same way I treated Cliff Davis", clearly referring to the targeted enforcement of alleged violations at properties owned by landlord Cliff Davis who owned a large number of properties in the City of Boston and was the target of enforcement activities by the Inspectional Services Department and Kevin Joyce. Exhibit A, *Lincoln Smith Deposition*, p.113 Line 16- p. 114 line 8. Exhibit B, *Deposition of Commissioner Joyce* p. 45 line 11-19.

FACTS CONCERNING THE AFTERMATH OF THE EVENTS OF DECEMBER 27, 2000

20. After Smith received the Notices of Violation, all work was performed in a timely fashion, with all appropriate permits taken and all repairs completed in a proper and workmanlike manner. Despite those efforts, Mr. Joyce failed and refused to close out the violations or clear any of the violations, delaying and/or refusing to perform re-inspections. When Mr. Smith inquired as the status of the re-inspections and the clearing of the violations, he was informed that his was a special investigation and that all activity and contact was through Mr. Joyce personally. Exhibit N, *Verified Complaint.*

*21.* Mr. Smith's requested a full explanation of the status of the case, in writing, on numerous occasions, but received no response except general correspondence which vaguely referenced open violations and providing that criminal complaints would be sworn out against him. Exhibit R, *Correspondence from Lincoln Smith to Evangeline Davis,* Exhibit S, *Correspondence from Lincoln Smith to Kevin Joyce*, Exhibit T, *Correspondence from Lincoln Smith to Department of Inspectional Services*, Exhibit U *Correspondence from Lincoln Smith to Dion Irish*. Exhibit V, *Correspondence from Lincoln Smith to Dion Irish,* Exhibit W *Correspondence from Lincoln Smith to Dion Irish,* Exhibit X Correspondence between Lincoln Smith and *Michael Ford*, Exhibit Y, *Correspondence from Lincoln Smith to Michael Slavin,* Exhibit Z *Correspondence from Lincoln Smith to City of Boston*, Exhibit AA *Correspondence from Lincoln Smith to Allen Major.*

22. The animus of the City of Boston, the Inspection Services Department and its Commissioner, Kevin Joyce, relate back to earlier litigation and the Judgment won by Mr. Smith in an action against the administration of Mayor Thomas Menino and the City of Boston. Mr. Smith was at all times cognizant of Kevin Joyce's close relationship with Mayor Menino and Consalvo and the animus towards him by these individuals. Exhibit N, *Verified Complaint, E*xhibit B, *Deposition of Kevin Joyce*, p. 30 line 3- p. 31 line 13, Exhibit A, *Deposition of Lincoln Smith*, p. 33-36 line 5, p.114 line 9- p. 118 line 7.

23. In a city which receives and handles as many as thirty-three (33) calls per day in cold stretches during sever winter months, the Inspectional Services Department dedicated an enormous amount of resources to this one small property owner and its Commissioner was heard to say that "we've got him" as he prepared to go to the property. The City, through its Inspectional Services Department, brought media attention to this otherwise insignificant event, providing them with clearly erroneous information in an effort to embarrass and humiliate the plaintiff, and failed and refused to clear the violations, despite their knowledge that the repairs demanded had been completed, instead threatening criminal complaints against the plaintiff.   Exhibit A., *Deposition of Kevin Joyce* p. 49 line 24- p.50 line 5. Exhibit O, *Affidavit of Julie Fothergill*, Exhibit K, *Boston Globe Article*, Exhibit, L *Boston Globe Article*, Exhibit M, *Boston Herald Article.*

WHEREFORE, the Plaintiff, Lincoln Smith, hereby moves this honorable Court to deny Defendant's motions for Summary Judgment, and find that genuine issues of material facts still exist that need to be resolved at trial.

    Respectfully submitted
    Plaintiff
    By his Attorney,

    /s Mark T. Stopa_____
    Mark T. Stopa, Esq. (BBO#560264)
    STOPA & ASSOCIATES, LLC
    36 Mechanic Street, Suite 208
    Foxboro, Massachusetts 02035-2073
    508-543-0600